**Patricia McNEES, Appellant,**

v.

**MOUNTAIN HOME, AR, City of; Lyle Scott, individually and in his official capacity as a Mountain Home Police Officer, Appellees.**

No. 92–3677.

United States Court of Appeals,
Eighth Circuit.

Submitted May 4, 1993.

Decided May 26, 1993.

Rehearing and Rehearing En Banc
Denied July 7, 1993.

Keith Rutledge, Batesville, AR, for appellant.

Terry R. Ballard, North Little Rock, AR, for appellee City of Mountain Home.

David L. Ethredge, Mountain Home, AR, for appellee Lyle Scott.

Before McMILLIAN, WOLLMAN and LOKEN, Circuit Judges.

McMILLIAN, Circuit Judge.

Patricia McNees appeals from a final order entered in the United States District Court [1]

---

1. The Honorable H. Franklin Waters, Chief Judge, United States District Court for the Western District of Arkansas.

for the Western District of Arkansas, granting summary judgment to defendants in this civil rights action filed under 42 U.S.C. § 1983. For the reasons discussed below, we affirm.

McNees, a Michigan resident, was in Mountain Home, Arkansas, in April 1988, to testify as an expert witness for Shirley Gould in Gould's domestic action against Larry Gould. Lyle Scott, an officer in the Mountain Home police department's criminal investigation division, who also works as a private investigator for his wife's agency, was a witness for Larry Gould.

On April 15, 1988, McNees received a subpoena, via overnight mail, issued by the Clerk of the Chancery Court on April 13, 1988, directing her to appear in Baxter County, Arkansas, on April 18 and 19, 1988. She appeared on those days, but did not testify. She was instructed by the court to appear on subsequent scheduled trial dates. While in her hotel in Mountain Home, Arkansas, McNees observed a "peeping tom" outside her window and identified him as a Los Angeles police officer who had testified the day before for Larry Gould. She reported the incident to the Los Angeles Police Department (LAPD). Lyle Scott, assisting the LAPD, investigated her complaint. At the end of the investigation, Scott concluded that the officer was in another city at the time of the alleged incident. Scott filed an affidavit in support of an arrest warrant.

Pursuant to the initial subpoena and the court's admonition, McNees reappeared at court on January 19, 1989. On January 20, 1989, while in the witness room waiting to testify, a deputy sheriff served McNees with an arrest warrant, charging her with obstructing government operations by filing a false report, a misdemeanor charge. After she was convicted in the municipal court, McNees appealed to the circuit court for de novo review. On January 8, 1990, the circuit court dismissed the charge on the State's motion.

In December 1991, McNees filed this § 1983 action against the City of Mountain Home; Lyle Scott, individually and in his official capacity as a police officer; Linda Scott; and Larry Gould.[2] She alleged that she was wrongfully arrested and that Scott, in his official capacity, investigated her activities in furtherance of a conspiracy with Larry Gould to discredit her as a witness in the *Gould* case and in her professional capacity. She also alleged that the City was aware of Scott's conflict of interest and, by refusing to relieve Scott of his duties in the investigation, acquiesced in the conspiracy. She claimed the actions of the defendants violated her equal protection rights, because as a subpoenaed witness she was immune from arrest under Arkansas law, and she was deprived of her liberty and denied due process when defendants caused the dissemination of false and misleading information about her arrest and conviction in order to discredit her and harm her reputation. She sought compensatory and punitive damages; and demanded a jury trial.

After Scott, in his individual capacity, moved for summary judgment, the district court concluded that summary judgment was proper as to all defendants. Under Ark. Code Ann. § 16–43–102 (1987), "all witnesses shall be privileged from arrest in all cases except treason, felony, or breach of the peace during their attendance on any court where their attendance is required by subpoena." The district court held that for the statutory immunity to apply, the witness must be testifying pursuant to a properly issued subpoena. In this case McNees received a subpoena "duces tecum" through the mail in Michigan. Rule 45(c) of the Arkansas Rules of Civil Procedure, however, does not provide for subpoena power over out-of-state witnesses testifying in a civil case. The district court concluded the immunity statute was inapplicable because the Chancery Court could not have issued a valid subpoena under Rule 45, McNees was not a person over whom the Chancery Court could exercise jurisdiction, and she voluntarily entered the state to provide testimony. Thus, McNees was not denied equal protection of the law.

The district court further concluded that McNees's conspiracy claim failed because she did not assert a violation secured by federal statute or the Constitution, and injury to reputation alone was not a constitutional de-

**2.** McNees's claims against Linda Scott and Larry Gould are not at issue in this appeal.

privation of liberty. Although McNees may have a state law claim for defamation or malicious prosecution, the district court observed such actions are not cognizable under § 1983.

For reversal, McNees argues that the district court erred in granting summary judgment sua sponte to the City and to Scott in his official capacity because they did not move for summary judgment. She also argues the district court misinterpreted Arkansas law regarding witness immunity; although the Chancery Court may not have been able to enforce the subpoena, it nevertheless was a valid subpoena in compliance with Rule 45. In addition, she appeared at court in January 1989 because the Chancery Court had directed her to return while she was in Arkansas in April 1988. McNees argues she was denied equal protection and "privileges and immunities of citizens of the United States" which Arkansas affords to all other citizens. Finally, McNees argues the district court erred in concluding there were no material facts in dispute regarding her liberty interest. She specifically states that there was sufficient evidence to create a fact question as to whether her due process rights were violated.

■ We agree with the district court that McNees was not under an enforceable subpoena when she appeared in Arkansas in April 1988. The Arkansas rules do not provide for subpoena power for out-of-state witnesses in civil cases. Ark.R.Civ.P. 45. Because the Chancery Court did not have authority to compel McNees to appear to testify and her appearance was voluntary, her appearance was not "required by subpoena." Thus, she would not be entitled to immunity under Ark.Code Ann. § 16–43–102.

The district court did not discuss McNees's second appearance in January 1989. At that time, McNees returned as a result of the Chancery Court's admonition, while she was subject to that court's jurisdiction. McNees argues that policy considerations in encouraging witnesses to testify in Arkansas require that she be among those persons entitled to witness immunity. Although the Arkansas courts have not interpreted Ark.Code Ann. § 16–43–102, we do not believe that, under these circumstances, McNees was entitled to its protections. She was an out-of-state expert witness appearing in a civil case; her attendance in that case was not "required by subpoena." Thus, McNees has not stated an equal protection claim for a violation of the state statute. Likewise, McNees's substantive due process claim fails. See Chesterfield Dev. Corp. v. City of Chesterfield, 963 F.2d 1102, 1105 (8th Cir.1992) (even "bad faith" violation of state law is not cognizable under § 1983).

■ To the extent McNees is claiming malicious prosecution, her claim is not cognizable under § 1983 because it does not allege a constitutional injury. See Gunderson v. Schlueter, 904 F.2d 407, 409 (8th Cir.1990). Her allegation that she was denied due process when information concerning her arrest was disseminated to other jurisdictions was dismissed on the basis that she only alleged harm to her reputation, which alone is inadequate to constitute a constitutional deprivation of liberty. See Paul v. Davis, 424 U.S. 693, 701, 96 S.Ct. 1155, 1160–61, 47 L.Ed.2d 405 (1976). McNees argues that the district court erred in concluding her damages were so limited, because her damages also included expenses related to her compelled appearance and her attorney's fees for her representation. Regardless of the damages issue, her claim does not rise to a constitutional violation because she did not allege a procedural violation in her criminal trial and defendants' actions were not so outrageous as to amount to a substantive due process claim. See Gunderson v. Schlueter, 904 F.2d at 410. We do not consider McNees's additional argument regarding her denial of "privileges and immunities" because it was raised for the first time on appeal.

■ The last issue concerns the grant of summary judgment sua sponte in favor of the City and Scott in his official capacity. In those instances where the party against whom judgment was entered is provided sufficient notice and opportunity to contest summary judgment and where the liability of the party who did not file a motion is merely derivative, such that no genuine issues of material fact exist, a sua sponte grant of summary judgment is permissible. Interco Inc. v. National Sur. Corp., 900 F.2d 1264, 1269 (8th Cir.1990). Here, because no genu-

ine issues of material fact exist as to the City and Scott in his official capacity, summary judgment in their favor was proper. *See id.*

Accordingly, the judgment of the district court is affirmed.