**Margo Ann MYERS, Plaintiff,**

v.

**BECKER COUNTY, Becker County Sheriff Clarence Paurus, Deputies John Ostlund, Warren Rethwisch, Patrick Johnston, Merlin Engum and John Does, Defendants.**

Civ. No. 4–92–291.

United States District Court,
D. Minnesota,
Fourth Division.

Oct. 12, 1993.

a fiduciary relationship does not exist here, this

special circumstance obviously does not apply.

John M. James, Minneapolis, MN, for plaintiff.

Barry P. Hogan, Gunhus, Grinnell, Klinger, Swenson & Guy, Ltd., Moorhead, MN, for defendants.

## ORDER

DOTY, District Judge.

This matter is before the court on the motion of defendants for summary judgment on plaintiff's federal claims. Defendants also seek to dismiss plaintiff's state law claims for lack of jurisdiction. Based on a review of the file, record and proceedings herein, and for the reasons stated below, the court grants defendants' motions.

## BACKGROUND

In 1983, Margo Ann Myers ("Myers") moved onto a 100 acre farm near Detroit Lakes in Becker County, Minnesota. Myers lived alone. She had a limited veterinary practice, raised cattle and goats for personal use and for sale and gave horseback riding instruction. Between 1987 and March 1990, the time period relevant here, Myers had approximately 26 cattle, 8 horses and 30 to 40 goats. Myers lived in a small apartment area that was built at one end of the pole barn where she kept her livestock. From 1983 through 1986, Myers erected fences near the perimeter of the farm. After 1986, Myers attempted to keep the fences maintained and in good repair but had difficulty doing so on her limited income.

The owners of adjoining property, the Bohnsacks, had problems with goats belonging to Myers in 1987. The Bohnsacks complained to the Becker County Sheriff's Office that Myers' goats were coming onto their property and damaging seedling trees. Deputy John Ostlund spoke to Myers and told her she needed to fix her fences so that her animals could not escape from her property. Mr. Bohnsack made another complaint about the goats in April 1988. He also said that Myers refused to fix her fences. During the summer of 1989, both the Bohnsacks and another neighbor, Mrs. Ehrnst, repeatedly complained about Myers' goats coming onto their land and causing damage. Mrs. Ehrnst also complained about Myers' horses and cattle escaping and causing damage to her property. There were also several reports that Myers' cattle were on or near the public road adjacent to her land.

Myers spoke with a Becker County deputy on one occasion about her cattle being on or near the road. Members of the town board, including Mr. Bohnsack, approached Myers to discuss the escaped animals but nothing was resolved. Deputy Ostlund claims that he spoke to Myers about the escaped livestock but she stated that it was not her problem. The evidence also indicates that during 1989 various deputies tried on several occasions to contact Myers at her home to discuss the escaped animals but she refused to answer the door or acknowledge their presence.[1]

---

1. It should be noted that Myers did not have a telephone during this time period.

On September 5, 1989, as a result of frequent complaints by her neighbors, a summons and complaint charging Myers with public nuisance was issued. The summons and complaint named a "Margo Meyer." The hearing date noticed in the summons was September 25, 1989. However, Deputy Merlin Engum did not serve Myers until the next day, September 26, 1989. Myers admitted that she realized the summons concerned her animals and that complaints had been made by her neighbors the Bohnsacks and Ehrnsts. Nonetheless, Myers mailed the papers to the Becker County Attorney with an unsigned note that stated, "Dear Sirs: The defendant as listed on this Summons is not me." Myers did not appear in response to the summons and a failure to appear warrant was issued against Myers on November 2, 1989. The name on the warrant was spelled "Margo Meyer."

On March 28, 1990, Lieutenant Warren Rethwisch ("Rethwisch") and Deputy Patrick Johnston ("Johnston") drove to Myers' farm in separate vehicles to execute the warrant. Both vehicles became stuck on the entry road to Myers' farm. The officers worked the cars free and proceeded to Myers' barn on foot. The officers arrived at Myers' barn around 10:00 p.m. and approached the front door. Both officers were uniformed. Myers gestured to the officers to go around to the side entrance. The officers entered the barn through large sliding doors, which were open, and met Myers in the barn area.

The officers told Myers they had a warrant because she failed to appear in court in response to the summons. The officers claim they also told Myers she was being arrested and taken into custody. Myers insists that the officers never told her they were there to arrest her. Myers explained her position on the summons and the officers indicated they disagreed. She then asked why the officers were there so late at night. The officers allegedly said they "round up" people at night because they are too busy during the day.

Myers turned away from the officers without saying anything and moved toward the apartment area of the barn. Myers claims she merely turned to get bottles of milk for her young goats, but the officers believed she was attempting to escape arrest. The officers each grabbed one of her wrists from behind to prevent her from going into the apartment area. Myers fought to break their hold and struggled to get away from the officers. She also bit Rethwisch on the hand. The officers forced Myers to the ground. Rethwisch landed on top of her, pinning her down with his body. The officers tried to get Myers' arms behind her back but she continued to struggle. Myers told the officers they were hurting her. Rethwisch told her to relax and when she did, he was able to handcuff her. The officers then let Myers up off the ground.

Myers allegedly asked the officers if they were arresting her. When the officers indicated they were, she questioned why they did not say so in the first place. The officers responded that they did. Myers then asked if they would release her so she could tend to her animals before being taken into custody. The officers, concerned about Myers' access to pitchforks, axes and other potential weapons, refused her request.[2] The officers then walked Myers back to the patrol cars and Rethwisch took her to the station for booking.

Myers claims she sustained several injuries as a result of the force used by Rethwisch and Deputy Johnston. Immediately after the incident, Myers had a black and blue bruise on the bridge of her nose, sore shoulders and her knees and right elbow were painful and swollen. Her right knee has allegedly suffered a loss of strength and mobility making walking and kneeling difficult. Myers claims she later discovered that her elbow had been fractured. She also attributes an arthritic condition in her left foot to the force used during her arrest.

At a hearing on April 19, 1990, Myers pled guilty with an explanation. Myers stated that she had not acted intentionally. The

---

**2.** Rethwisch indicates that he was previously informed by Deputy Merlin Engum that Myers had said she would not be afraid to use a pitchfork if the police came out to her farm. Myers claims she never brandished a pitchfork nor threatened to do so.

judge explained that the statute also prohibited permitting a condition to exist which causes a public nuisance, and indicated that inadequate fencing that allowed animals to roam freely was such a condition. Myers admitted that her goats had gone onto other people's property and eaten vegetation there. In June, Myers indicated that she wanted to change her plea. The court denied the motion after Myers conceded that she had understood the charge and the consequences when she entered her plea. Myers appealed the denial of her motion but the trial court's ruling ·was affirmed.

■ Myers brought this action under sections 1983 and 1985 of Title 42 alleging violation of her Fourth and Fourteenth Amendment rights. Section 1983 creates no substantive rights, but provides only a remedy when rights secured by federal law or the Constitution are deprived under color of state law. *Lugar v. Edmondson,* 457 U.S. 922, 924, 102 S.Ct. 2744, 2747, 73 L.Ed.2d 482 (1982). Myers also asserts various state law actions.[3] Defendants move for summary judgment on the federal claims and seek to dismiss the state law claims for lack of jurisdiction.

## DISCUSSION

■ The court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). This standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which requires the trial court to direct a verdict if there can be but one reasonable conclusion as to the verdict. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Id.* at 249, 106 S.Ct. at 2510.

■ On a motion for summary judgment, the court views the evidence in favor of the nonmoving party and gives that party the benefit of all justifiable inferences that can be drawn in her favor. *Id.* at 250, 106 S.Ct. at 2511. The nonmoving party, however, cannot rest upon mere denials or allegations in the pleadings. Nor may the nonmoving party simply argue facts supporting its claim will be developed later or at trial. Rather the nonmoving party must set forth specific facts, by affidavit or otherwise, sufficient to raise a genuine issue of fact for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). If reasonable minds could differ as to the import of the evidence, a verdict should not be directed. *Anderson,* 477 U.S. at 250–51, 106 S.Ct. at 2511–12. If a plaintiff fails to support an essential element of a claim, however, summary judgment must issue because a complete failure of proof regarding an essential element renders all other facts immaterial. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53.

### 1. Qualified Immunity

■ Under federal law, police officers have immunity against civil actions unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The purpose of the qualified immunity defense is to shield a government official from suit rather than merely to serve as a defense to liability. *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985). Qualified immunity " 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.' " *Hunter v. Bryant,* — U.S. —, —, 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1991) (quoting *Malley v. Briggs,* 475 U.S. 335, 341, 343, 106 S.Ct. 1092, 1096, 1097, 89 L.Ed.2d 271 (1986)). The standard for qualified immunity is one of objective reasonableness. *Harlow,* 457 U.S.

---

3. The state law actions include claims for negligence, intentional infliction of emotional distress, assault, battery and defamation.

at 818, 102 S.Ct. at 2738. It is important to recognize, however, that in evaluating qualified immunity, the court must examine the information possessed by the police officer.

▉▉▉▉ Whether a police officer is immune from trial is a question of law. *Hunter v. Bryant,* —— U.S. at ——, 112 S.Ct. at 537. The court must first determine whether the plaintiff has asserted a constitutional right. *Siegert v. Gilley,* 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991). Next, the court must determine whether the constitutional right in question is "clearly established." *Id.* To show that the law is "clearly established," a plaintiff must make a particularized showing that the contours of a right are "sufficiently clear" that a "reasonable [officer] would understand that what he is doing violates plaintiff's rights." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). The issue of qualified immunity is separate from the merits. "The issue on the merits is whether the officer *violated the law* when the arrest was made, whereas the immunity question is whether the officer *violated clearly established law* when the arrest was made." *Gainor v. Rogers,* 973 F.2d 1379, 1383 (8th Cir. 1992) (emphasis in original).

▉▉▉▉ If the plaintiff can show that the defendant's conduct violated clearly established law, the defendant " 'must demonstrate that no material issues of fact remain as to whether the defendant's actions were objectively reasonable in light of the law and the information the defendant possessed at the time of his actions.' " *Cross v. City of Des Moines,* 965 F.2d 629, 632 (8th Cir.1992) (quoting *Salmon v. Schwarz,* 948 F.2d 1131, 1136 (10th Cir.1991)). The defendant is entitled to judgment as a matter of law if there is no genuine issue as to any material fact

pertaining to the objective reasonableness of the defendant's action. *Id.* To succeed on a motion for summary judgment, defendants need not show that there is only one reasonable conclusion a jury could reach. The standard to be applied by the court is whether the defendants " 'acted reasonably under settled law in the circumstances, not whether another reasonable, or more reasonable, interpretation of the events can be constructed.' " *Cross,* 965 F.2d at 632 (quoting *Hunter,* —— U.S. at ——, 112 S.Ct. at 537).

## 2. Minnesota Rules of Criminal Procedure 3.03

Myers claims that the police officers failed to comply with Minnesota Rules of Criminal Procedure 3.03 which provides that a warrant charging a misdemeanor may be executed after 10:00 p.m. only "by direction of the issuing officer, endorsed on the warrant, when exigent circumstances exist." The court assumes for present purposes that the state statute did require the officers to execute the arrest warrant before 10:00 p.m. and that the officers violated that requirement.[4]

▉▉▉▉ It is clear, however, that this does not amount to a section 1983 claim. A violation of state law, without more, does not state a claim under the federal Constitution or section 1983. *See, e.g., Bagley v. Rogerson,* 5 F.3d 325, 329 (8th Cir.1993) ("State law, whether statutory or decisional, is not the equivalent of the federal Constitution."); *Meis v. Gunter,* 906 F.2d 364, 369 (8th Cir. 1990), *cert. denied,* 498 U.S. 1028, 111 S.Ct. 682, 112 L.Ed.2d 673 (1991).[5] Myers insists that regardless of whether Rule 3.03 was violated, the fact that the officers executed the warrant late at night is itself evidence of objective unreasonableness. Because no constitutional right is implicated by Myers'

---

4. The court notes, however, that even under the generous standard that applies to the nonmoving party confronted with a motion for summary judgment, the evidence does not indicate that the officers executed the warrant after 10:00 p.m. The police records show that Myers was booked at the Sheriff's Office at 10:21 p.m. It is undisputed that after her arrest, Myers and the two officers walked ¼ to ½ mile to the squad cars and then drove approximately 10 miles to Detroit Lakes. Thus, if the court were to reach this question, it would likely hold that no reasonable

person could find the warrant was executed after 10:00 p.m.

5. Myers also contends that Becker County had a policy of executing search warrants at night in contravention of Minnesota Rules of Criminal Procedure 3.03. Having concluded that violation of Rule 3.03 is not actionable under section 1983, the court need not otherwise address this claim against Becker County.

claim, however, the court need not reach the issue of objective reasonableness.

### 3. Alleged Constitutional Violations

 The complaint asserts violations of the Fourth and Fourteenth Amendment. The gravamen of Myers' action are her claims that the officers violated her constitutional rights by making an unlawful arrest and using excessive force. Neither claim implicates the Fourteenth Amendment. The United States Supreme Court has made clear that all claims that police officers used excessive force in the course of a "seizure" are properly analyzed under the Fourth Amendment's "reasonableness" standard, rather than under a substantive due process standard. *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989). Accordingly, the court holds that the Fourth Amendment is the only constitutional right allegedly infringed by defendants' actions.

### 4. Excessive Force

 Myers claims that Lieutenant Rethwisch and Deputy Johnston used excessive force during her arrest on March 28, 1990. The Fourth Amendment protects citizens from unreasonable search and seizure. Apprehension by force is a seizure subject to the Fourth Amendment's reasonableness requirement. It cannot be disputed that plaintiff's claim that Rethwisch and Deputy Johnston used excessive force asserts a constitutional right. The question before the court is whether the challenged use of force was reasonable within the meaning of the Fourth Amendment.

 The court must analyze the excessive force claim in light of the reasonableness standard articulated in *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Application of the standard requires balancing of "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Tennessee v. Garner*, 471 U.S. 1, 8, 105 S.Ct. 1694, 1699, 85 L.Ed.2d 1 (1985). Moreover, the court must pay "careful attention to the facts and circumstances of each particular case," including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396, 109 S.Ct. at 1872. The reasonableness of a particular use of force must be tested from the perspective of a reasonable officer on the scene. *Id.*, 490 U.S. at 396, 109 S.Ct. at 1872. The critical inquiry is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397, 109 S.Ct. at 1872 (citations omitted).

 The court concludes that it was objectively reasonable for the officers to believe that Myers was attempting to escape when she began moving away from them toward her apartment area. Myers did not indicate her intent when she turned away from the officers. The officers were not required to wait and see what Myers had in mind before impeding her progress. Given that Myers had ready access to potential weapons, it was also reasonable for the officers to conclude that she posed a danger of physical harm. The Fourth Amendment does not require the officers to forgo the use of force until Myers actually brandished a weapon.

While Myers' alleged misconduct was neither violent nor serious, she did resist arrest in a manner that physically threatened the arresting officers. The only force applied by the officers before Myers began struggling was the grabbing of her wrists. The force then escalated in response to Myers' attempt to break free. The force used was minimal; the officers did not strike, punch or kick Myers nor did they draw their weapons. There was no further use of force after Myers succumbed to the officers' authority. The court concludes that a reasonable officer possessing the same information could have come to the same conclusion as Rethwisch and Deputy Johnston and believed that the use of force was lawful and necessary.

The court has considered Myers's arguments that factual discrepancies create material issues of fact precluding summary judg-

ment on her claim of excessive force. The court holds that the facts relied on by Myers are insufficient to raise a genuine issue of material fact concerning the reasonableness of the force used by the officers. Having concluded that the forced used to secure Myers' arrest in this case was constitutionally reasonable, the court grants defendants' motion for summary judgment on the grounds of qualified immunity as to Myers' excessive force claim.

### 5. Unlawful Arrest

Myers claims that defendant Deputy John Ostlund swore out a complaint and summons without probable cause. Myers makes a similar claim about the arrest warrant issued against her on November 2, 1989. The court examines the complaint and summons and the arrest warrant separately to determine whether Myers has alleged a violation of a constitutional right.

 It is fundamental that an arrest violates the Fourth Amendment when there exists no probable cause that an individual is engaged in criminal activity. *See Brown v. Texas,* 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979). Deputy Ostlund is entitled to immunity for swearing out a complaint and arrest warrant against Myers only if a reasonably competent officer would have had an objectively reasonable belief that probable cause existed for Myers' arrest. *Peterson v. City of Plymouth,* 945 F.2d 1416, 1420 (8th Cir.1991) (citing *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986)). The fundamental question is "whether a reasonably well-trained officer in [the same] position would have known that [the evidence] failed to establish probable cause and that he should not have applied for the warrant." *Malley,* 475 U.S. at 345, 106 S.Ct. at 1098. "The issue is not whether the [complaint] actually establishes probable cause but whether the officer had an objectively reasonable belief that it established probable cause." *Thompson v. Reuting,* 968 F.2d 756, 760 (8th Cir.1992).

### A. Summons and Complaint

Myers contends that Deputy Ostlund acted in an objectively unreasonable manner by charging her under a criminal statute for what she contends was purely a civil matter. Myers claims that charging her with misdemeanor public nuisance was unlawful because there was no evidence that she had any criminal intent or that her conduct annoyed or injured a considerable number of members of the public. Defendants make a persuasive argument that Myers' claim is precluded by the findings of the Minnesota state court that probable cause did exist in this case. The court tends to agree with defendants; nonetheless, out of an abundance of caution, the court analyzes Myers' contentions under the rubric of section 1983.

The statute which Deputy Ostlund accused Myers of violating provides in relevant part:

> Whoever by an act or failure to perform a legal duty intentionally does any of the following is guilty of maintaining a public nuisance, which is a misdemeanor: (1) Maintains or permits a condition which unreasonably annoys, injures or endangers the safety, health, morals, comfort or repose of any considerable number of members of the public.

Minn.Stat. § 609.74. The Advisory Committee Comment explains that the word "intentionally" was added to "eliminate those cases where there is a good faith claim on the part of the defendant that he has a right to continue with the activity in which he is engaged."

While the court agrees that the statute requires some criminal intent, the court does not believe the requisite intent is as high as Myers contends. The court notes that the statute makes it a misdemeanor to "permit" a condition to exist which unreasonably annoys others. Myers knew that her animals were escaping from her farm and allegedly causing damage to other property. She also knew that inadequate fencing was allowing the animals to escape. On the basis of the facts known to Deputy Ostlund, it appeared that Myers ignored warnings about her fences and took no action to abate the problem.

Myers also contends that there was no probable cause that her conduct annoyed or injured "any considerable number of mem-

bers of the public" as required by the statute. The Sheriff's Office was contacted repeatedly by two neighbors over a period of two years about Myers' livestock escaping onto their property. Moreover, there was also evidence that Myers' animals had escaped onto the public road adjacent to her land. The court does not consider it significant that most of the incidents reported involved private persons and land. The fact that Myers' animals were loose on or near a public road involves the public and falls within the confines of the statute under which Myers was charged.

■■■■ The court concludes that a reasonably competent officer possessing the same information known to Deputy Johnston would have had an objectively reasonable belief that there was probable cause that Myers had violated Minn.Stat. § 609.74. Myers insists that because civil remedies were available, the pursuit of this matter in criminal court was objectively unreasonable. The court rejects this argument. As long as probable cause exists, the exercise of prosecutorial discretion by the Becker County Attorney's Office does not otherwise violate the Constitution or federal law. *See McNees v. City of Mountain Home, Ark.*, 993 F.2d 1359, 1361 (8th Cir.1993) (claim of malicious prosecution does not state a claim under 42 U.S.C. § 1983).

## B. Arrest Warrant

■■■■ Myers claims that the arrest warrant issued against her on November 2, 1989, was without probable cause. The court agrees.[6] Minn.Stat. § 609.49, subd. 2, provides that:

A person charged with a gross misdemeanor or misdemeanor who intentionally fails to appear in court for trial on the charge after having been notified that a failure to appear for a court appearance is a criminal offense, is guilty of a misdemeanor.

It is undisputed that Myers was not served with the summons and complaint until September 26, 1989. The hearing date noticed in the summons was September 25, 1989. It

is axiomatic that Myers cannot be charged with a misdemeanor for not appearing at a hearing of which she did not have prior notice. Accordingly, there was absolutely no basis to objectively believe that probable cause existed to arrest Myers for failure to appear.

■■■■ Although Myers has demonstrated a violation of her Fourth Amendment rights, she has *no recourse available to her* in this case. Assistant County Attorney Joseph Evans ("Evans") sought the arrest warrant against Myers. Myers, however, did not name Evans as a defendant. Myers contends that Evans is an official with final policymaking authority and urges the court to hold Becker County liable for his actions. *See St. Louis v. Praprotnik*, 485 U.S. 112, 121, 108 S.Ct. 915, 923, 99 L.Ed.2d 107 (1988) (local governments may face liability under section 1983 for actions by government officials who have final policymaking authority). The highest official responsible for setting policy in a particular area of the government's business is an official with final policymaking authority. *Pembaur v. Cincinnati*, 475 U.S. 469, 480, 106 S.Ct. 1292, 1298, 89 L.Ed.2d 452 (1986). Evans is not the County Attorney of Becker County, he is merely an assistant County Attorney. As such, he lacks the power to make official policy. Moreover, the County cannot be held vicariously liable as a matter of law under section 1983. *See Monell v. New York Dep't of Social Servs.*, 436 U.S. 658, 690, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978) (local government cannot be liable "*solely* because it employs a tortfeasor.") (emphasis in original).

■■■■ Myers also contends that because the arrest warrant was not supported by probable cause, Rethwisch and Deputy Johnston violated her Fourth Amendment rights by making an unlawful arrest. The officers, however, could not reasonably have been expected to know that the warrant was defective. The warrant states that Myers was served on September 26, 1989, but does not indicate the appearance date she failed to

---

6. This conclusion does not conflict with the criminal proceedings in state court. Myers was convicted on a charge of public nuisance and that

conviction was affirmed. The state court decisions do not address the failure to appear charge.

observe. Thus, the court holds that Rethwisch and Deputy Johnston are entitled to qualified immunity as a matter of law.

### 7. Claims Against Becker County

 A local government entity, like the County, is liable under section 1983 only if an official policy or custom caused a violation of Myers' constitutional rights. *Monell,* 436 U.S. at 690, 98 S.Ct. at 2036. To avoid summary judgment, Myers must produce evidence sufficient to show a County policy or custom violated her constitutional rights. Myers has failed to make the requisite showing. There is no evidence whatsoever that the County had a policy, official or otherwise, for using excessive force when executing arrest warrants or for issuing arrest warrants without probable cause. Accordingly, the court grants the motion of defendant Becker County for summary judgment.

### 8. Section 1985 Claim

 Myers alleges Lieutenant Rethwisch, deputies Engum, Ostlund, and Johnston conspired to bring false charges against her in violation of 42 U.S.C. § 1985. To survive summary judgment, Myers must identify specific facts suggesting that there was a mutual understanding among the conspirators to take actions directed towards an unconstitutional end. *See, e.g., Haley v. Dormire,* 845 F.2d 1488, 1490 (8th Cir.1988). Myers has offered no evidence to substantiate her claim. Her subjective beliefs and bare allegations fall well short of demonstrating a conspiracy. Myers suspects and speculates that defendants conspired to bring false charges against her, but conjecture is insufficient to withstand a motion for summary judgment. Accordingly, the court grants defendants' motion for summary judgment on Myers' conspiracy claim under section 1985.

### 9. State Law Claims

 The court has discretion to consider plaintiff's state law claims under the doctrine of supplemental jurisdiction. *United Mine Workers v. Gibbs,* 383 U.S. 715, 725–26, 86 S.Ct. 1130, 1138–39, 16 L.Ed.2d 218 (1966). The court declines to exercise supplemental jurisdiction over Myers' state law claims because it has dismissed the federal law claims over which it has original jurisdiction. *See* 28 U.S.C. § 1367(c)(3); *Gibbs,* 383 U.S. at 276, 86 S.Ct. at 865 ("[Supplemental] jurisdiction is a doctrine of discretion, not of plaintiff's right.... if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."). The court dismisses plaintiff's state law claims without prejudice.

### CONCLUSION

Based on a review of the file, record and proceedings herein, and for the reasons stated above, **IT IS HEREBY ORDERED** that:

1. To the extent that plaintiff's federal claims are based on violations of the Fourteenth Amendment or violations of state law, defendants' motion for summary judgment is granted.

2. Defendants' motion for summary judgment on plaintiff's claim of excessive force under 42 U.S.C. § 1983 is granted.

3. Defendants' motion for summary judgment on plaintiff's claim of unlawful arrest under 42 U.S.C. § 1983 is granted.

4. Defendants' motion for summary judgment on plaintiff's claim of conspiracy under 42 U.S.C. § 1985 is granted.

5. Plaintiff's state law claims are dismissed without prejudice.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**