**Terry L. MADEWELL, Plaintiff–Appellant,**

v.

**Mike DOWNS, Anthony P. Grootens, and John Prine, Defendants–Appellees.**

**No. 94–2612.**

United States Court of Appeals, Eighth Circuit.

Submitted April 14, 1995.

Decided Aug. 29, 1995.

Gary Owens, Kansas City, MO, argued for appellant.

Cynthia Hyde, Assistant U.S. Attorney, argued (Timothy W. Anderson, Assistant Attorney General, on the brief), for appellees.

Before McMILLIAN, FAGG, Circuit Judges, and BENNETT,* District Judge.

BENNETT, District Judge.

In this lawsuit, Terry L. Madewell, *pro se,* brought a *Bivens* action against agents of the federal Drug Enforcement Administration (DEA) and an action pursuant to 42 U.S.C. § 1983 against members of the Missouri State Highway Patrol (MSHP). Madewell alleged violation of his Fifth Amendment right to due process in the DEA's "adoption" and administrative forfeiture, pursuant to 21 U.S.C. § 881, of currency seized by the MSHP during Madewell's arrest on a state charge of conspiracy to distribute marijuana and methamphetamine, and violation of his Fourteenth Amendment right to due process in the MSHP's transfer of the seized property to the DEA. Madewell sought actual and punitive damages and return of the currency. In an unpublished opinion, the United States District Court for the Western District of Missouri,[1] granted summary judgment in fa-

---

* The HONORABLE MARK W. BENNETT, United States District Judge for the Northern District of Iowa, sitting by designation.

1. The HONORABLE RUSSELL G. CLARK, United States District Judge.

vor of all defendants, and Madewell appealed. We affirm.

## I.

### A. Factual Background

During the winter of 1988–89, plaintiff Terry Madewell was one of the subjects of an investigation by several county sheriff's offices and police departments in southwestern Missouri concerning a major drug conspiracy operating in the area. A warrant was eventually issued by the Missouri state district court for Lawrence County for Madewell's arrest on a charge of conspiracy to distribute marijuana and methamphetamine. On January 17, 1989, Madewell was arrested by members of the MSHP in the town of Springfield, in Greene County, Missouri, on the warrant issued by the Lawrence County district court. During the arrest, a small quantity of marijuana was found in the pocket of Madewell's jacket. In addition, $9,400 in U.S. currency was found on the seat of Madewell's truck. Madewell initially denied any knowledge or ownership of either the marijuana or the money. However, he later testified that he was taking the money to his attorney. The truck and the currency were both seized by the MSHP. Additional charges for possession of the marijuana were filed against Madewell in Greene County district court.

On March 29, 1989, Madewell filed a motion pursuant to Mo.Rev.Stat. § 542.301 [2] in the course of his criminal prosecution in Lawrence County for return of the seized property. The Lawrence County court held a hearing on the motion on June 7, 1989, and on June 16, 1989, ordered the State and "any of its officers or agents" to return the truck and the currency to Madewell. The defendants here were not parties to that proceeding. No appeal of the order entered by the Lawrence County court was ever filed, nor has any proceeding been instituted to enforce that court's order.

During the pendency of Madewell's motion in state court in Lawrence County, the MSHP's seizure was "adopted" by the DEA. The details and timing of this "adoption" are of particular interest on this appeal. The suggestion that the seizure of the currency be adopted by the DEA arose in a telephone conversation between members of the MSHP, including defendant Prine, and DEA agent Mike Downs, who is also one of the defendants here. In a letter dated April 10, 1989, an Assistant United States Attorney, Richard Monroe, requested that defendant Prine "present [the property seized during Madewell's arrest] to the DEA for adoptive administrative forfeiture" pursuant to discussions the correspondents had had with

2. In 1989, Mo.Rev.Stat. § 542.301 provided in pertinent part as follows:

 1. Unless the statute authorizing seizure provides otherwise, property which comes into the custody of an officer or of a court as the result of any seizure and which has not been returned to the claimant shall be disposed of as follows:

 (1) Stolen property, or property acquired in any other manner declared an offense by chapters 569 and 570, RSMo, but not including any of the property referred to in subsection 2 of this section [i.e., property not including weapons, tools, devices, and substances used by the owner or with the owner's consent as a means for committing felonies other than possessing burglary tools], shall be delivered by order of court upon claim having been made and established, to the person who is entitled to possession;

 (2) The claim shall be made by written motion filed with the court with which a motion to suppress has been, or may be, filed. The claim shall be barred if not made within one year from the date of the seizure;

 (3) Upon the filing of such motion, the judge shall order notice to be given to all persons interested in the property, including other claimants and the person from whose possession the property was seized, of the time, place and nature of the hearing to be held on the motion. The notice shall be given in a manner reasonably calculated to reach the attention of all interested persons. Notice may be given to unknown persons and to persons whose address is unknown by publication in a newspaper of general circulation in the county. No property shall be delivered to any claimant unless all interested persons have been given a reasonable opportunity to appear and to be heard;

 (4) After a hearing, the judge shall order the property delivered to the person or persons entitled to possession, if any. The judge may direct that delivery of property required as evidence in a criminal proceeding shall be postponed until the need no longer exists....

Mo.Rev.Stat. § 542.301 has not been amended since 1989.

Downs. On April 18, 1989, the commanding officer of the MSHP, John H. Ford, wrote to Downs stating that the seized currency had been deposited in the MSHP's Criminal Forfeiture Fund at a Missouri bank, and requesting that the MSHP receive 50% or more of the seized money because the MSHP had conducted that share of the investigation leading to the seizure. The money was turned over to the DEA on May 1, 1989, in the form of two cashier's checks drawn on the Missouri bank, which show the remitter as the MSHP and the payee as the U.S. Marshal Service. The uncontradicted testimony of defendant Prine in the Lawrence County proceedings was that the checks were drawn by his supervisor, whom he identified as "Lt. Bob Asher." There was no court order requiring or allowing the transfer from the state officials to the DEA.

William J. Snider, forfeiture counsel for the DEA, affirmed that DEA administrative forfeiture proceedings concerning the seized currency were initiated in April of 1989 pursuant to 21 U.S.C. § 881. A report on the forfeiture of the seized property was forwarded from Snider's office to the DEA on July 13, 1989, and, finding that sufficient evidence to support administrative forfeiture had been provided by the DEA field office, the case was "accepted" for administrative forfeiture. On July 21, 1989, the DEA sent a notice of seizure letter by certified mail to Madewell at his last known address in Springfield, Missouri. Notice to Madewell was sent to the address in Springfield, Missouri, because that was the address Madewell had given upon his arrest in Greene County. That letter was returned marked "Moved. Left no address." Pursuant to regulations, the DEA then published the notice of seizure for three consecutive weeks in *U.S.A. Today,* beginning on July 26, 1989. No claims to the seized currency were ever received, and the money was administratively forfeited on December 7, 1989, pursuant to 21 U.S.C. § 881.

### B. Procedural Background

Madewell filed his federal lawsuit on December 15, 1993, to recover the seized currency and damages for violation of his Fifth Amendment due process rights. Madewell named as defendants DEA agents Mike Downs and Anthony P. Grootens, and MSHP officers John Prine and Robert Asher. Madewell never obtained service on defendant Asher, because the MSHP notified Madewell that there was no such person by that name employed by the MSHP. Madewell also named as defendants two Lawrence County prosecutors, Scott Sifferman and Robert George. Madewell claimed that defendants violated his due process rights by improperly allowing DEA adoption of the seizure of the currency when the Missouri district court was entertaining proceedings concerning disposition of the property. Madewell also claimed that the DEA violated his due process rights, because the notice of the administrative forfeiture proceedings was sent to Madewell at the wrong address when his proper address was known to state and federal agents.

On December 16, 1993, the United States District Court dismissed George and Sifferman on the ground that they had no legal obligation to enforce the Lawrence County court's order for return of the currency to Madewell and on the ground that as prosecuting attorneys they were immune to a suit for damages brought pursuant to 42 U.S.C. § 1983. Madewell does not appeal that ruling here.

On March 31, 1994, the federal defendants, Downs and Grootens, moved to dismiss Madewell's complaint pursuant to *Fed. R.Civ.P.* 12(b)(6) for failure to state a claim upon which relief can be granted, or, in the alternative, for summary judgment pursuant to *Fed.R.Civ.P.* 56(c) on the ground that there was no factual dispute and no legal basis for liability. It is the United States District Court's grant of this motion on June 3, 1994, that Madewell appeals here. Although defendant Prine did not join in the motion to dismiss, he had sought dismissal for failure to state a claim in his answer to Madewell's complaint. The district court included the MSHP defendants in its grant of summary judgment against Madewell.

### C. The Decision Below

After a statement of the facts to which the parties had stipulated for the purposes of the

summary judgment motion, the district court's disposition of the motion, in its entirety, was as follows:

> Patrolmen Asher and Prine turned the seized currency over to the Missouri State Highway Patrol which they were obligated to do. At that point they no longer had any obligation in regard to the seized currency. The Missouri State Highway Patrol is not subject to suit under 42 U.S.C. § 1983. *Aubuchon v. Missouri,* 631 F.2d 581, 582 (8th Cir.1980). Based upon the cases of *United States v. $12,390.00,* 956 F.2d 801 (8th Cir.1992) and *Conrod v. Missouri State Highway Patrol,* 810 S.W.2d 614 (Mo.App.1991). [Sic] The Patrol had the right to transfer the seized currency to the DEA and the DEA had the right to accept it. The defendants are entitled to summary judgment in this case. The order for summary judgment shall not be a bar to plaintiff's attempt to enforce the Lawrence County judgment against the State of Missouri. It is
>
> ORDERED that the defendants' motion for summary judgment is granted without prejudice to plaintiff if he chooses to try to enforce the Lawrence County judgment against the State of Missouri.

A timely appeal followed.

### D. The Appeal

On appeal, Madewell asserts that the grant of summary judgment was erroneous on three separate grounds.[3] First, Madewell asserts that, contrary to the district court's conclusions, his due process rights were violated by the DEA's adoption of the seizure and transfer of the currency by the MSHP to the DEA. Specifically, in his brief Madewell states that the adoption was improper when "(a) a state court action had been filed before the transfer, in which the Appellant sought return of the property, (b) an order was issued by that court requiring return of the property to the Appellant, and (c) at no point did the Appellees pursue a state court order permitting turnover of the property from the State to the DEA." Second, Madewell asserts that his due process rights were violat-

ed by the failure of the DEA to send notice of the administrative forfeiture to his proper address and reliance instead on publication of notice in *U.S.A. Today.* Again in his brief, Madewell specifies that the notice was improper when "(a) the Appellee DEA agents knew or should have known the Appellant's then-current location, (b) the Appellee DEA agents knew or should have known the name and address of the Appellant's attorney, and (c) the resulting constructive notice to the Appellant was in the form of boilerplate in three issues of *USA Today.*" Third, Madewell contends that entry of summary judgment in favor of defendants Prine and Asher was improper, because "it was done *sua sponte* and without prior notice to the Appellant." The court will consider each of these grounds for reversal *seriatim* below. However, the court turns first to the standards applicable to an appeal from the entry of summary judgment.

### II.

█ This court has identified the standards by which it decides whether to affirm or reverse the district court's grant of summary judgment in a number of recent decisions. This court reviews a grant of summary judgment *de novo,* applying the same standards employed by the district court. *See, e.g., Nettles v. American Tel. & Tel. Co.,* 55 F.3d 1358, 1362 (8th Cir.1995); *ELCA Enter., Inc. v. Sisco Equip. Rental & Sales, Inc.,* 53 F.3d 186, 189 (8th Cir.1995); *Landreth v. First Nat'l Bank of Cleburne County,* 45 F.3d 267, 268 (8th Cir.1995); *Carnes v. United Parcel Serv., Inc.,* 51 F.3d 112, 115 (8th Cir.1995); *McLaughlin v. Esselte Pendaflex Corp.,* 50 F.3d 507, 510 (8th Cir.1995). It will affirm the grant of summary judgment if the evidence, viewed in the light most favorable to the non-moving party, shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Fed.R.Civ.P.* 56(c); *Nettles,* 55 F.3d at 1362; *ELCA Enter., Inc.,* 53 F.3d at 189; *Carnes,* 51 F.3d at 115; *McLaughlin,* 50 F.3d at 510. In the present case, Madewell does not assert that

---

**3.** Counsel was appointed to represent Madewell on this appeal. This court appreciates the able

and conscientious representation counsel has provided Madewell.

genuine issues of material fact precluded entry of summary judgment by the district court. Rather, he asserts that the grant of summary judgment was erroneous as a matter of law.

## III.

The court therefore turns first to the question of whether the district court properly held as a matter of law that Madewell's due process rights were not violated by the adoption of the state seizure of the currency by the DEA and transfer by the MSHP of the funds seized to the DEA without a court order. The court turns first to the question of whether the DEA defendants, Downs and Grootens, violated Madewell's due process rights by adopting the seizure of the currency and pursuing federal administrative forfeiture.

### A. Due Process And Federal Adoption Of Seizures

The Comprehensive Drug Abuse Prevention and Control Act of 1970, Pub.L. No. 91–513, Title II, § 511, 84 Stat. 1276 (codified as amended at 21 U.S.C. § 881(a)), provides for the civil forfeiture of property that has been used either to facilitate illegal drug transactions or to acquire the proceeds of such criminal activity. However, to be subject to civil forfeiture under § 881, the property must fall into one of eight categories defined in § 881(a). The relevant category here, § 881(a)(6), has been described as "illicitly obtained wealth." *Linarez v. United States Dep't of Justice*, 2 F.3d 208, 209 (7th Cir. 1993).[4]

The civil forfeiture statute incorporates the forfeiture procedures found in the Tariff Act of 1930, which governs customs forfeitures. 21 U.S.C. § 881(d);[5] *United States v. Woodall*, 12 F.3d 791, 792 (8th Cir.1993); *Glasgow v. Drug Enforcement Admin.*, 12 F.3d 795, 797 (8th Cir.1993); *see also Linarez*, 2 F.3d at 209; *Scarabin v. Drug Enforcement Admin.*, 966 F.2d 989, 991 (5th Cir.1992). The Tariff Act of 1930 includes provisions for "administrative forfeitures" of property valued at $500,000 (formerly, $100,000) or less pursuant to 19 U.S.C. §§ 1607–1609 and 21 C.F.R. §§ 1316.75–77. *Woodall*, 12 F.3d at 792; *Linarez*, 2 F.3d at 209. The Tariff Act also provides that an administrative " 'declaration of forfeiture under [19 U.S.C. § 1609] shall have the same force and effect as a final decree and order of forfeiture in a judicial forfeiture proceeding in a district court of the United States.' " *Id.* at 793 (quoting 19 U.S.C. § 1609(b)).

A federal agency may adopt the seizure of property seized by another agency as related to illegal drug use or trafficking. *See* 21 C.F.R. § 1316.91(*l*); *United States v. One Ford Coupe Auto.*, 272 U.S. 321, 325, 47 S.Ct. 154, 155, 71 L.Ed. 279 (1926) (the United

---

4. Section 881(a)(6) provides for forfeiture to the United States of the following:

> All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter, except that no property shall be forfeited under this paragraph, to the extent of the interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.

21 U.S.C. § 881(a)(6).

5. Title 21 U.S.C. § 881(d) provides as follows:

> The provisions of law relating to the seizure, summary and judicial forfeiture, and condemnation of property for violation of the customs laws; the disposition of such property or the proceeds from the sale thereof; the remission or mitigation of such forfeitures; and the compromise of claims shall apply to seizures and forfeitures incurred, or alleged to have been incurred, under any of the provisions of this subchapter, insofar as applicable and not inconsistent with the provisions hereof; except that such duties as are imposed upon the customs officer or any other person with respect to the seizure and forfeiture of property under the customs laws shall be performed with respect to seizures and forfeitures of property under this subchapter by such officers, agents, or other persons as may be authorized or designated for that purpose by the Attorney General, except to the extent that such duties arise from seizures and forfeitures effected by any customs officer.

The text of this provision was the same in 1989 as it is now, having last been amended in 1984 to add "any of" following "incurred, under." Pub.L. 98–473, § 306(d).

States may adopt seizure of property forfeitable under federal law if seized by local official or one with no authority to make seizure); *Linarez v. United States Dep't of Justice,* 2 F.3d 208, 209 (7th Cir.1993) (federal adoption may occur when seized property has been "used or acquired to facilitate a drug related offense" under federal law); *United States v. $12,390.00,* 956 F.2d 801, 803, 805 (8th Cir.1992) (noting that pursuant to 21 U.S.C. § 881, federal agencies may adopt seizures from local agencies for federal administrative forfeiture); *United States v. One 1979 Chevrolet C–20 Van,* 924 F.2d 120, 121 (7th Cir.1991) (citing 21 C.F.R. § 1316.91(*l*) as providing the authority for adoption); *United States v. Winston–Salem/Forsyth County Bd. of Educ.,* 902 F.2d 267, 272 (4th Cir.1990) (recognizing the practice of federal adoption of local seizures, and sustaining that practice over objections that it violated 21 U.S.C. § 903, which explicitly rejects congressional intent to "occupy the field" of forfeiture). Madewell asserts, however, that the adoption by the DEA of the seizure of the currency by the MSHP in question here violated his due process rights. This court does not agree for a number of reasons.

■ First, courts, including the United States Supreme Court, have held that the United States may adopt a seizure even when the person who seized the property had no authority to *seize* the property, or the initial seizure was constitutionally tainted. *United States v. One Ford Coupe Auto.,* 272

U.S. 321, 325, 47 S.Ct. 154, 155, 71 L.Ed. 279 (1926); *United States v. Winston–Salem/Forsyth County Bd. of Educ.,* 902 F.2d 267, 272 (4th Cir.1990); *United States v. One 1977 Mercedes Benz,* 708 F.2d 444, 450 (9th Cir.1983);[6] *United States v. One 1956 Ford Tudor Sedan,* 253 F.2d 725, 727 (4th Cir. 1958). For the same reason, we agree with the Fourth Circuit Court of Appeals that the United States "may adopt a seizure where there was no authority to *transfer* the property." *Winston–Salem/Forsyth County Bd. of Educ.,* 902 F.2d at 272 (emphasis added).[7] Thus, any constitutional infirmity in the *transfer* of the seized property does not taint the adoption of the seizure by the federal agency.

■ Second, no preseizure notice or hearing is required before a federal agency may seize personal property subject to forfeiture for violation of federal drug laws. *United States v. $8,850 in United States Currency,* 461 U.S. 555, 562 n. 12, 103 S.Ct. 2005, 2011 n. 12, 76 L.Ed.2d 143 (1983); *Calero–Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 676–80, 94 S.Ct. 2080, 2088–2090, 40 L.Ed.2d 452 (1974); *United States v. South Half of Lot 7 and Lot 8, Block 14, Kountze's 3rd Addition To The City of Omaha,* 876 F.2d 1362, 1370 (8th Cir.1989); *United States v. One Red Ferrari,* 875 F.2d 186, 189 (8th Cir.1989); *United States v. Certain Real Estate Property Located At 4880 S.E. Dixie Highway,* 838 F.2d 1558, 1561 (11th Cir.

**6.** In *One 1977 Mercedes Benz,* the Ninth Circuit Court of Appeals held that any unconstitutional conduct by local officials in seizing drug-related property is "irrelevant" to the power of the federal government to forfeit the property where the government can establish the requirements for forfeiture with evidence untainted by any constitutional violation by the local officials who initially seized the property. *One 1977 Mercedes Benz,* 708 F.2d at 450.

**7.** In *Winston–Salem/Forsyth County Bd. of Educ.,* the Fourth Circuit Court of Appeals came to the conclusion that the DEA's adoption of a seizure of cash was proper despite a North Carolina statute that provided that "property seized by a law enforcement officer must be kept 'under the direction of the court or magistrate as long as necessary to assure that the property will be produced at and may be used as evidence at any trial.'" *Winston–Salem/Forsyth County Bd. of*

*Educ.,* 902 F.2d at 272 (quoting N.C.Gen.Stat. § 15–11.1(a) (1983)). The Fourth Circuit Court of Appeals also rejected arguments that federal adoption was in violation of 21 U.S.C. § 903, which specifically states that no provision of the drug forfeiture act was to be "construed as indicating an intent on the part of the Congress to occupy the field in which the provision operates, including criminal penalties, to the exclusion of any State law on the same subject matter which would otherwise be within the authority of the State...." *Id.* The Fourth Circuit Court of Appeals noted that in the case before it, there had been no state forfeiture action, although in the criminal proceedings, the state court had ordered the local law enforcement officials to return the cash to the claimant. *Id.* The court found that the only forfeiture proceeding ever initiated was the federal one. *Id.*

1988).[8] The Ninth Circuit Court of Appeals has therefore held that due process does not require any notice of the federal adoption of a seizure and an opportunity to protest, because "due process does not require that pre-seizure notice or opportunity to be heard be given the owner of [property] subject to forfeiture." *One 1977 Mercedes Benz*, 708 F.2d at 450 n. 5 (citing *Calero–Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 679, 94 S.Ct. 2080, 2089–2090, 40 L.Ed.2d 452 (1974), and *United States v. One 1971 BMW 4–Door Sedan*, 652 F.2d 817, 821 (9th Cir.1981)). Because there is no pre-seizure notice requirement for federal seizure of property, it follows that there is no notice requirement prior to federal adoption of a seizure made by local authorities.

■ Third, courts have long held that a federal agency's adoption of a seizure has the same effect as if the federal agency had originally seized the property on the date it was seized by the local authorities. *The Caledonian*, 17 U.S. 100, 103, 4 Wheat. 100, 4 L.Ed. 523 (1819); *One Ford Coupe*, 272 U.S. at 321, 47 S.Ct. at 155, 71 L.Ed. 279 (1926); *United States v. $119,000 in U.S. Currency*, 793 F.Supp. 246, 249 (D.Hawaii 1992) (calling this the "'adoptive forfeiture' doctrine"); *United States v. Certain Real Property Known as Lot B, Governor's Rd., Milton, N.H.*, 755 F.Supp. 487, 490 (D.N.H.1990); *United States v. Alston*, 717 F.Supp. 378, 380

(M.D.N.C.1989) (calling this the "adoption principle"), *aff'd sub nom. United States v. Winston–Salem/Forsyth County Bd. of Educ.*, 902 F.2d 267 (4th Cir.1990). Although this court would not suggest that a late federal adoption of a seizure and actual transfer of the property to federal control could or should be used to avoid the effects of proper state court proceedings concerning the seized property after its seizure by state or local officials and before federal adoption, *see $12,390*, 956 F.2d at 805 (state court may have primary and exclusive jurisdiction over the *res* if it first establishes *in rem* jurisdiction over the *res* prior to institution of federal forfeiture proceedings),[9] the doctrine does suggest that the claimant of such property has no due process complaint about the adoption itself. The claimant's due process rights concern the disposition of the property, including its actual forfeiture,[10] rather than adoption of the seizure by one sovereign after actual seizure by another. To put it another way, the claimant's due process concern is with the forfeiture of the property, not with the identity of the sovereign who ultimately undertakes the forfeiture action.

■ The foregoing cases establish that the due process concerns raised by a federal forfeiture are entirely separate from the adoption of the seizure of the property by federal agents. Because the DEA could adopt the seizure even if the MSHP was

---

**8.** The Supreme Court recently established, however, that pre-seizure notice is required for the pre-forfeiture seizure of real property in *United States v. James Daniel Good Real Property*, —— U.S. ——, ——, 114 S.Ct. 492, 505, 126 L.Ed.2d 490, 126 L.Ed.2d 490 (1993), and this court has adhered to that requirement. *United States v. One Parcel of Real Property with Buildings, Appurtenances and Improvements, Known as Lot Six, Block One, Mills Second Subdivision, Burleigh County, N.D.*, 48 F.3d 289, 291 (8th Cir. 1995); *United States v. Three Parcels of Real Property*, 43 F.3d 388, 393 (8th Cir.1994); *United States v. One Parcel of Real Property Located at 9638 Chicago Heights, St. Louis, Mo.*, 27 F.3d 327, 330 (8th Cir.1994).

**9.** This court's conclusion on the import of the "adoption principle" on state court actions prior to the actual adoption must be contrasted with the effect given the principle by some district courts. *See, e.g., Certain Real Property Known as Lot B*, 755 F.Supp. at 490 (holding federal adop-

tion of seizure meant federal jurisdiction over forfeiture attached first, and state court orders purporting to direct return of the property to the claimant could be enjoined by the federal court); *Alston*, 717 F.Supp. at 380 (describing the result of the adoption principle as making the federal government the winner of the "unseemly race to the res," but holding that the state court was without jurisdiction to issue orders concerning disposition of the property seized even though the federal adoption occurred after the state court assumed jurisdiction). However, the effect given the doctrine by the Supreme Court in *One Ford Coupe*, 272 U.S. at 325, 47 S.Ct. at 155, 71 L.Ed. at 279, was to establish that the seizure would be treated as if it had been made by an official with *authority* to make such a seizure, *i.e.*, a federal official, rather than by someone with no authority to make the seizure.

**10.** We will return to the due process concerns involved in the forfeiture itself when we turn to Madewell's notice arguments.

without authority to transfer the property seized, because due process does not require any notice prior to such an adoption, and because due process is not concerned with the identity of the sovereign seeking to forfeit the seized property, but with the forfeiture action itself, this court holds that Madewell's due process rights were not violated by the DEA defendants when they adopted the seizure of the $9,400 in U.S. currency. The district court properly granted summary judgment in favor of the federal DEA agents, Downs and Grootens, on Madewell's claim that those defendants violated his constitutional rights to due process by adopting the seizure.

### B. Due Process And Transfer Of Seized Property From State To Federal Agencies

Although the court concludes that the DEA's adoption of the seized currency did not violate Madewell's due process rights, the question of whether the MSHP defendants violated Madewell's due process rights when they transferred the currency to the DEA is a different question. In *United States v. Woodall*, 12 F.3d 791 (8th Cir.1993), this court wrote:

> At oral argument, the government asserted that the adoption procedure, by which local authorities voluntarily delivered the money to DEA, gave the agency jurisdiction to forfeit it under 21 U.S.C. § 881. That may well be true. *See United States v. $12,390*, 956 F.2d 801, 805 (8th Cir.1992). But it does not answer the question, by what authority under Missouri law and the Constitution did the St. Charles jailers, as bailees of an inmate's money, surrender possession of that money to another sover-

eign, without notice or other due process to the inmate? That question is not before us.

*Woodall*, 12 F.3d at 794 n. 2. Although that question was not before the court in *Woodall*, Madewell has attempted to place that question squarely before this court.

Madewell argues that MSHP Officer Prine did not have the authority to release Madewell's property to the DEA, because the appellees failed to obtain permission from the state of Missouri to release the property and failed to acknowledge the Lawrence County court order requiring return of the property to Madewell. Madewell first attempts to distinguish the precedent cited by the court below. He argues that *United States v. $12,390*, 956 F.2d 801, 805 (8th Cir.1992), and *Conrod v. Missouri State Highway Patrol*, 810 S.W.2d 614 (Mo.Ct.App.1991), cases in which this circuit court of appeals and the Missouri Court of Appeals, respectively, held Missouri state courts did not have jurisdiction to order return of property seized by Missouri law enforcement officials and transferred to the DEA, share two key characteristics: "(1) the DEA's acquisition of the seized property pre-dated the criminal defendant's filing of a state court claim for return of the seized property, and (2) there was a judicial determination that the seized property was connected with a drug transaction." Appellant's Brief, pp. 12–13. Madewell asserts that neither characteristic is present here.[11] Madewell asserts that the end result of the summary judgment ruling below has been to allow seizure of Madewell's money without any showing that it was connected to a drug transaction.[12]

Madewell relies heavily on the decision of the Seventh Circuit Court of Appeals in

---

**11.** Madewell's arguments are summarized as follows:

The bottom line in this action is that the Appellees never had authority to transfer Mr. Madewell's property from the Missouri State Highway Patrol to the DEA. The property apparently was simply handed over to the DEA in May of 1989 on the authority of a phone call, even though the DEA had not yet decided to accept the case for administrative forfeiture. *See* DR 9(a) at 62–64; DR 8 (Snider Declaration § 4(a)). Moreover, the same state court before which Appellee Prine testified affirma-

tively ordered that the property be returned to Terry Madewell, and still the Appellees did not act to return the property. They did not even send their initial notice of forfeiture proceedings until July 21, 1989, over a month after the Lawrence County Circuit Court directed that the property be returned.
Appellant's Brief, p. 17.

**12.** Madewell then attacks the sufficiency of the evidence of a connection between the money and a drug transaction, a matter that is plainly not before the court here.

*United States v. One 1979 Chevrolet C–20 Van*, 924 F.2d 120 (7th Cir.1991) (hereinafter *C–20 Van* ), for the proposition that "[a] local police department may not take seized property and just pass it on as it pleases to the FBI." *C–20 Van*, 924 F.2d at 122. The court in *C–20 Van* held that "[i]f the federal authorities wanted the van, they were bound to seek a turnover order from the [state] circuit court of the county in which the van was seized." *Id.* at 123. Madewell points out that the MSHP officials had no turnover order from the Missouri state court for either Greene County, where his truck and currency were seized, or Lawrence County, which had issued his arrest warrant, authorizing MSHP officials to turn over Madewell's property to the DEA. Therefore, Madewell argues, the MSHP defendants violated his due process rights by just handing over his property to the DEA for forfeiture. The defendant/appellees assert that the seized funds were never in the control of the Missouri district court for Lawrence County, because they had been seized in Greene County.

We find the law on what process attaches to the transfer of property from state officials to federal officials for the purposes of federal forfeiture somewhat unsettled. Nonetheless, some consistent strands lead us to conclude that there has been no due process violation here.

 This court has not often encountered questions regarding a conflict between state jurisdiction over seized property and federal adoptive forfeiture of that property. However, in *$12,390*, this court considered an appeal from the district court's award of money seized from the claimant's home during execution of a state search warrant by local law enforcement officials to the federal government. *$12,390*, 956 F.2d at 803. In that case, after federal administrative forfeiture proceedings had begun, the claimants filed a

motion in state court for return of the property seized during the search, and the state court granted the motion prior to the disposition of the federal forfeiture action in federal court. *Id.* The claimants argued that the Missouri court acquired exclusive jurisdiction as the result of the seizure of the property pursuant to a state warrant. *Id.*[13] This court held, however, that no state forfeiture proceeding was ever commenced to establish the exclusive jurisdiction of the Missouri court over the seized property. *Id.* The court found that "[t]he fact that the government had taken possession of the money and initiated the requisite paperwork for administrative forfeiture is determinative in this case," because local authorities had allowed the DEA to adopt the seizure and to institute forfeiture proceedings prior to any action in the Missouri court establishing the jurisdiction of the state court over the money. *Id.* The court cited *Conrod v. Missouri State Highway Patrol*, 810 S.W.2d 614 (Mo.Ct.App. 1991), as supporting the conclusion that as a matter of law no encroachment on the jurisdiction of the state courts had occurred. *Id.* By the time the state court ordered return of the money, the particular currency was no longer in state custody. *Id.* This court concluded that there was no affront to the jurisdiction of the Missouri state court as the result of voluntary transfer to federal authorities of property seized pursuant to a state warrant or as the result of federal forfeiture of the property after the state court ordered return of the property. *Id.* at 806. The court compared the result in the case before it with that in *United States v. $79,123.49 in U.S. Cash and Currency*, 830 F.2d 94 (7th Cir.1987), in which the federal district court did not have jurisdiction over the forfeiture proceedings, because forfeiture proceedings had already been instituted in state court, and the state court had therefore acquired primary jurisdiction. *Id.* at 806 n. 4.

---

**13.** It was, and is, well-settled law that only one court may have jurisdiction over the *res* in an *in rem* proceeding, and therefore the first court to obtain *in rem* jurisdiction maintains it to the exclusion of all others, whether that court be state or federal. *$12,390*, 956 F.2d at 805; *see also Penn General Casualty Co. v. Pennsylvania*, 294 U.S. 189, 195, 55 S.Ct. 386, 389, 79 L.Ed.

850 (1935); *United States v. Certain Real Property, 566 Hendrickson Blvd., Clawson, Oakland County, Mich.*, 986 F.2d 990, 993 (6th Cir.1993); *United States v. One 1986 Chevrolet Van*, 927 F.2d 39, 44 (1st Cir.1991); *C–20 Van*, 924 F.2d at 121; *Winston–Salem/Forsyth County Bd. of Educ.*, 902 F.2d at 271; *$79,123.49*, 830 F.2d at 96.

The decision in *$12,390* therefore stands for at least two propositions. First, seizure of property pursuant to a state warrant does not establish exclusive state jurisdiction over the seized property preventing its voluntary transfer to federal authorities. *Accord United States v. Certain Real Property,* 986 F.2d 990, 994 (6th Cir.1993); *United States v. One 1986 Chevrolet Van,* 927 F.2d 39, 44–45 (1st Cir.1991). Second, only a state *forfeiture* action or comparable *in rem* proceeding for disposition of the property will preclude federal forfeiture jurisdiction, making a transfer of the property in question to federal control an affront to state court jurisdiction and a violation of a claimant's due process rights. *Accord Certain Real Property,* 986 F.2d at 993–94.[14] These conclusions require further discussion here.

In *Scarabin v. Drug Enforcement Admin.,* 966 F.2d 989 (5th Cir.1992), the Fifth Circuit Court of Appeals took issue with the holding of *$12,390* that seizure pursuant to a state warrant did not establish the state's exclusive authority over the property making transfer to federal control improper. *Scarabin,* 966 F.2d at 994. The court in *Scarabin* found that in the case before it, Louisiana had

"expressly provide[d] jurisdiction as an integral element of its statutory warrant and seizure scheme." *Id.* In both *$12,390* and the Missouri decision on which it is based, *Conrod,* however, the courts found that Missouri has no such jurisdictional element to its statutory warrant and seizure scheme, but instead approves of the voluntary turnover of seized property from state or local officials to federal agencies for commencement of forfeiture proceedings. Again, in the case upon which Madewell principally relies, *C–20 Van,* the Seventh Circuit Court of Appeals held that Illinois law specifically vested control over property seized in the courts, and therefore concluded that state or local law enforcement agencies could not turn over seized property for federal forfeiture without a "turnover" order from the court. *C–20 Van,* 924 F.2d at 122–23; *see also Linarez,* 2 F.3d at 214 (recognizing *C–20 Van* to so hold, but not deciding whether transfer in the case before it had been improper, because the issue was raised for the first time on appeal).

Although Missouri now has a statute specifically requiring a turnover order from the court before transfer of property to federal control,[15] it did not have such a statute

---

14. In *$12,390,* this court made no distinction between control of the actual currency seized and control of the funds representing that currency. *$12,390,* 956 F.2d at 804 (equating the *res* at issue with the funds deposited in the government's Asset Forfeiture Fund, and not identifying it solely as the actual currency seized). The court observed that when the *res* is cash, it is "fungible." *Id.* This treatment of the currency actually seized as fungible with any other equivalent funds must be contrasted with the notions of the Fifth Circuit Court of Appeals in *Scarabin v. Drug Enforcement Admin.,* 966 F.2d 989 (5th Cir.1992). In *Scarabin,* the Fifth Circuit Court of Appeals held that the DEA had never been in control of the *res,* because it had only received a cashier's check for an equivalent sum, and not the currency itself. *Scarabin,* 966 F.2d at 992–93 (relying on "traditional rules of *in rem* jurisdiction," to hold that the federal forfeiture of the currency "never happened"). However, this court has already held "traditional rules of *in rem* jurisdiction" to be inapplicable to fungible property, such as money. *$12,390,* 956 F.2d at 804. We therefore refuse to make a distinction between the transfer to the DEA of the $9,400 here via cashier's checks and transfer of the actual currency seized from Madewell. Currency, cashier's checks, and bank deposits are simply surrogates for each other, and in modern society are certainly regarded as "fungible,"

when the question is ownership of the funds each represents, although the court recognizes that the currency itself may have independent evidentiary value, as when it is tainted with drug residue and used for that reason as evidence of drug transactions.

15. Missouri recently passed Mo.Rev.Stat. § 513.647, which states as follows:

**513.647. Transfer of property seized by state or local agency to federal agency—ex parte proceeding**
1. No state or local law enforcement agency may transfer any property seized by the state or local agency to any federal agency for forfeiture under federal law until the prosecuting attorney and the circuit judge of the county in which the property was seized first review the seizure and approve the transfer to a federal agency. The prosecuting attorney and the circuit judge shall not approve any transfer unless it reasonably appears the activity giving rise to the investigation or seizure would be better pursued under federal forfeiture statutes. No transfer shall be made to a federal agency unless the violation would be a felony under Missouri or federal law.
2. Prior to transfer, in an ex parte proceeding, the prosecuting attorney shall file with the

at the time of the events in question here. Contrary to Madewell's assertions, the newly-enacted statute does not just make clear what had already been a requirement of Missouri law embodied in two other statutes enacted prior to 1989. Madewell asserts that the Missouri forfeiture statute, Mo.Rev.Stat. § 513.607 "stands alone" as establishing that state agencies obtain a forfeiture order for seized property.[16] That it assuredly does do, but requiring a court order for forfeiture pursuant to state law is a far cry from requiring an order for transfer of seized property to federal control for forfeiture pursuant to federal law. Here no state forfeiture, or "CAFA procedure," pursuant to Mo.Rev.Stat. § 513.607 was ever commenced.

Madewell also asserts that Mo.Rev.Stat. § 542.301 established a turnover order requirement. Although Mo.Rev.Stat. § 542.301 did, and still does, provide that "property which comes into the custody of an officer or of a court as the result of any seizure and which has not been returned to the claimant *shall* be disposed of" by court order "upon claim having been made and established, to the person who is entitled to possession," and that such claim "shall be made by written motion filed with the court with which a motion to suppress has been, or may be, filed," Mo.Rev.Stat. § 542.301 (emphasis added), this provision did not prevent voluntary transfer of property from state or local custody to federal custody in either *$12,390* or *Conrod.*

Mo.Rev.Stat. § 542.301 brings us to the second proposition drawn from *$12,390* regarding the nature of the state proceeding that establishes the exclusive jurisdiction of the state over seized property. No such proceeding, which would have been pursuant to Mo.Rev.Stat. § 513.607, was ever commenced in Missouri state court concerning the property at issue here. A motion for return of property pursuant to Mo.Rev.Stat. § 542.301 is more analogous to a motion for return of property pursuant to *Fed. R.Crim.P.* 41(e)[17] than to a state forfeiture

---

court a statement setting forth the facts and circumstances of the event or occurrence which led to the seizure of the property and the parties involved, if known. The court shall certify the filing, and notify by mailing to the last known address of the property owner that his property is subject to being transferred to the federal government and further notifying the property owner of his right to file a petition stating legitimate grounds for challenging the transfer. If within ninety-six hours after the filing of the statement by the prosecuting attorney, the property owner by petition shows by a preponderance of the evidence that the property should not be transferred to the federal government for forfeiture, the court shall delay such transfer until a hearing may be held. If the court orders a delay in transfer, no later than ten days after the filing of a petition under this section and sections 513.649 and 513.651, a hearing shall be held unless the court deems, for good cause shown, that a continuance should be granted. At the hearing, if the prosecutor has proved by a preponderance of the evidence that the investigation or seizure would be better pursued under the federal forfeiture statutes, the court shall order that the transfer shall be made.

16. Section 513.607 is a provision of the Missouri Criminal Activity Forfeiture Act (CAFA), and provides, in pertinent part, as follows:

1. All property of every kind used or intended for use in the course of, derived from, or realized through criminal activity is subject to civil forfeiture. Civil forfeiture shall be had by a civil procedure known as a CAFA forfeiture proceeding.

2. A CAFA forfeiture proceeding shall be governed by the Missouri rules of court, rules of civil procedure, except to the extent that special rules of procedure are stated herein.

3. An in rem CAFA forfeiture proceeding may be instituted by petition by the prosecuting attorney of the county in which the property is located or seized by the attorney general's office. The proceeding may be commenced before or after seizure of the property.

4. In lieu of, or in addition to, an in rem proceeding under subsection 3 of this section, the prosecuting attorney or attorney general may bring an in personam action for the forfeiture of property, which may be commenced by petition before or after the seizure of the property.

In addition, in subsection 5(2), the CAFA establishes that the investigative agency bears the burden to prove all of the allegations in its petition for forfeiture.

17. Federal Rule of Criminal Procedure 41(e) provides as follows:

(e) **Motion for Return of Property.** A person aggrieved by an unlawful search and seizure or by the deprivation of property may move the district court for the district in which the property was seized for the return of the property on the ground that such person is entitled to lawful possession of the property. The court

or other *in rem* proceeding. A number of federal courts have held, and we agree, that an action pursuant to *Fed.R.Crim.P.* 41(e) does not deprive the DEA or the federal court of jurisdiction over a civil forfeiture action. *Linarez*, 2 F.3d at 212 (Rule 41(e) motion is not a substitute or alternative to a forfeiture action); *United States v. Price*, 914 F.2d 1507, 1508–11 (D.C.Cir.1990) (after claimant had filed a Rule 41(e) motion, he received notice of a federal administrative forfeiture; the trial court entertaining the Rule 41(e) motion ruled that because of the federal administrative forfeiture action, the district court was not the proper forum for determining the claimant's right to return of the seized property, and the court of appeals held that once the government initiates an administrative forfeiture proceeding, the district court entertaining the criminal proceeding cannot resolve the issue of return of the property); *see also Certain Real Property*, 986 F.2d at 995 (a federal forfeiture action pursuant to 21 U.S.C. § 881 is an *in rem* action, which is "independent of any factually related criminal actions," which are *in personam* ); *One 1986 Chevrolet Van*, 927 F.2d at 44–45 (*in personam* criminal proceeding in state court for return of property does not bar federal *in rem* forfeiture actions); *United States v. Elias*, 921 F.2d 870 (9th Cir. 1990) (a claimant cannot frustrate a federal forfeiture action by filing motions for return of property pursuant to *Fed.R.Crim.P.* 41(e)).[18] Similarly, the Fourth Circuit Court of Appeals found that a North Carolina statute that provided that "property seized by a law enforcement officer must be kept 'under the direction of the court or magistrate as long as necessary to assure that the property will be produced at and may be used as evidence at any trial,' " did not bar turn over of seized property to federal control without a court order. *Winston–Salem/Forsyth County Bd. of Educ.*, 902 F.2d at 272 (quoting N.C.Gen.Stat. § 15–11.1(a) (1983)). The Fourth Circuit Court of Appeals noted that in the case before it, there had been no state *forfeiture* action, although in the criminal proceedings, the state court had ordered the local law enforcement officials to return the cash to the claimant. *Id.*

■ As a final contention, Madewell argues that "the logic and reasoning" of *C–20 Van* is that "fundamental due process" requires that property not be passed from local to federal agencies without a court giving its blessing. What fundamental due process requires, or more specifically, what the Fifth Amendment requires, is that persons not be *deprived* of property without due process of law. U.S. CONST. amend. V. Adherence to the requirements of 21 U.S.C. § 881 provides the due process protections necessary to ensure that persons are not unconstitutionally deprived of property.

■ Having found nothing in Missouri law establishing a due process requirement of a "turnover" order before property may be transferred by state authorities to federal authorities, we confront three further issues that need detain us only briefly concerning Madewell's first allegation of error. Madewell asserts that a further due process re-

shall receive evidence on any issue of fact necessary to the decision of the motion. If the motion is granted, the property shall be returned to the movant, although reasonable conditions may be imposed to protect access and use of the property in subsequent proceedings. If a motion for return of property is made or comes on for hearing in the district of trial after an indictment or information is filed, it shall be treated also as a motion to suppress under Rule 12.

18. The court observes that the questions asked in a Rule 41(e) proceeding and a federal forfeiture proceeding are fundamentally different. In a Rule 41(e) proceeding, the claimant's right to return of the property depends upon whether the claimant has been "aggrieved by an unlawful search and seizure or by the deprivation of prop-

erty," *Fed.R.Crim.P.* 41(e), but in a forfeiture action pursuant to 21 U.S.C. § 881, the question is whether there is probable cause to connect the property to illegal drug activity. *See, e.g., United States v. $87,060.00*, 23 F.3d 1352, 1354 (8th Cir.1994); *United States v. $7,850 in U.S. Currency*, 7 F.3d 1355, 1356 (8th Cir.1993); *United States v. $150,660.00*, 980 F.2d 1200, 1204 (8th Cir.1992). Thus, determination of grounds for return of property pursuant to *Fed.R.Crim.P.* 41(e) would not necessarily insulate it from civil forfeiture, because unconstitutional conduct in seizing drug-related property is "irrelevant" to the power of the federal government to forfeit the property where the government can establish the requirements for forfeiture with evidence untainted by any constitutional violation by the officials who initially seized the property. *One 1977 Mercedes Benz*, 708 F.2d at 450.

quirement prior to transfer of seized property to federal control is that there be a judicial determination that the seized property was connected with a drug transaction. We do not find such a requirement stated or suggested in the cases Madewell was attempting to distinguish from his own circumstances. *See $12,390*, 956 F.2d at 805; *Conrod*, 810 S.W.2d at 614. We decline to add such a requirement, because that is precisely the determination that must be made in the proceedings pursuant to 21 U.S.C. § 881 before federal forfeiture may be accomplished, and § 881 establishes the process due the claimant in making that determination.[19]

Finally, we have considerable doubt that even if we had determined that due process requirements for transfer of the seized property to federal control had not been met in this case, Madewell would have been entitled to any relief. The uncontradicted testimony of defendant Prine in the Lawrence County proceedings was that the transfer to federal control was actually made by his supervisor, whom he identified as "Lt. Bob Asher," who drew the cashier's checks in favor of the U.S. Marshal Service. The district court in fact found that Prine had turned over the seized property to his superiors at the MSHP and thereafter had no obligation with regard to the seized property. Defendant Asher has never been identified or served in this lawsuit. Therefore, no relief could be granted in Madewell's favor against any of the defendants before the court at the time the district court granted summary judgment in favor of the defendants on Madewell's claim that the transfer violated his due process rights. We therefore reject Madewell's first claim of error.

## IV.

We turn next to the "fundamental due process" question of what process was due Madewell before he could be deprived of the $9,400 in federal administrative forfeiture proceedings. Madewell asserts that his due process rights were violated by the forfeiture, because the DEA failed to send notice of the administrative forfeiture to his proper address and instead relied on publication of notice in *U.S.A. Today* when (a) the DEA agents knew or should have known his then-current location, (b) the DEA agents knew or should have known the name and address of Madewell's attorney, and (c) the resulting constructive notice to Madewell was in the form of boilerplate in three issues of *U.S.A. Today*.

This court most recently commented on the notice requirements for administrative forfeiture in *Woodall*:

> Under this procedure, DEA must publish notice of its intent to forfeit in a newspaper of general circulation once a week for at least three successive weeks, and must send "[w]ritten notice of seizure together with information on the applicable procedures ... to each party who appears to have an interest in the seized article." 19 U.S.C. § 1607(a).

> If no party files a claim asserting an interest in the property within twenty days of the first publication, DEA may declare

**19.** In contrast to Madewell's attempts to establish a due process requirement that seized property not be turned over to federal authority without a court's blessing, there may be an affirmative duty imposed upon state and local officials who seize property that may be forfeitable under federal drug laws to turn over such property to federal authorities. This duty stems from the incorporation into the civil forfeiture statute of the customs forfeiture provisions. Provisions of the Tariff Act, specifically 19 U.S.C. § 1602, impose a duty to report and to turn over property seized in violation of the customs laws of the United States. *State of Ohio v. Wright*, 992 F.2d 616, 623 & n. 3 (6th Cir.1993). Section 1602 provides that

> [i]t shall be the duty of any officer, agent, or other person authorized by law to make sei-

zures of merchandise or baggage subject to seizure for violation of the customs laws to report every such seizure immediately to the appropriate customs officer ... and to turn over and deliver to such customs officer any ... merchandise or baggage seized by him....

19 U.S.C. § 1602. In *Wright*, the Sixth Circuit Court of Appeals found the authority for the transfer of property seized by local officials to federal agents in this Tariff Act provision incorporated into the civil forfeiture statute by § 881(d). *Wright*, 992 F.2d at 623 & n. 3. We agree that such a duty exists, but only absent contrary provisions of state law, because Congress did not intend to "occupy the field" of forfeiture law. 21 U.S.C. § 903.

the property forfeited. *See* 19 U.S.C. § 1609.... However, if a proper claim is filed, DEA must refer the proceeding "to the United States attorney for the district in which seizure was made, who shall proceed to a condemnation of the merchandise or other property in the manner prescribed by law." 19 U.S.C. § 1608; *see also* 21 C.F.R. § 1316.78.

*Woodall,* 12 F.3d at 792–93. Thus, although § 881 provides for the administrative forfeiture of property, if a claimant appears seeking return of the property, the forfeiture must be concluded in federal district court. In *Woodall,* this court noted that "the statutory right to compel an agency to proceed by judicial condemnation is a vital congressional restraint on arbitrary confiscations. Yet, as in other adjudicatory settings, this right 'has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest.'" *Id.* at 793 (quoting *Mullane v. Central Hanover Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950)); *Glasgow v. United States Drug Enforcement Admin.,* 12 F.3d 795, 797 (8th Cir.1994) ("a claimant's right to compel the agency to proceed by judicial forfeiture is an important statutory check on the government's power to forfeit private property. Therefore, DEA's compliance with statutory and constitutional notice requirements are essential components of the statutory regime."). Madewell's assertion appears to be that because he did not receive the proper written notice, even though he was a "party who appears to have an interest in the seized article," he was never able to challenge the forfeiture in federal court, and thus was deprived of his property without due process of law.

In *Woodall,* this court, examining the notice requirement for administrative forfeiture, said,

> [T]he Constitution requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane [v. Central Hanover Trust Co.],* 339 U.S. [306,] 314, 70 S.Ct. [652,] 657, [94

L.Ed. 865 (1950)]. Whether notice was adequate is measured at the time the notice was sent. *See Sarit v. Drug Enforcement Admin.,* 987 F.2d 10, 14 (1st Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 241, 126 L.Ed.2d 195 (1993).

> When the government has actual knowledge of an interested party's whereabouts at the time forfeiture is commenced, failure to direct the statutorily required personal notice to that address cannot be considered compliance with either the statute or minimum due process standards. *See Mennonite Bd. of Missions v. Adams,* 462 U.S. 791, 800, 103 S.Ct. 2706, 2712, 77 L.Ed.2d 180 (1983).... Moreover, if the government is incarcerating or prosecuting the property owner when it elects to impose the additional burden of defending a forfeiture proceeding, fundamental fairness surely requires that either the defendant or his counsel receive actual notice of the agency's intent to forfeit in time to decide whether to compel the agency to proceed by judicial condemnation....

*Woodall,* 12 F.3d at 794–95 (some internal citations omitted). The claimant in *Woodall* had alleged that the notice of forfeiture was sent to his home, but that it was sent during the pendency of his federal criminal prosecution, the district court had ordered his release to a different residence known to the government, and no notice was mailed either to his correct address or to his attorney. *Id.* at 794. This court held that "if the facts in this case are as Woodall alleges—something we cannot determine on this record—he did not receive adequate notice of the administrative forfeiture and is entitled to have the forfeiture Declaration voided." *Id.* at 795; *see also Williams v. United States Drug Enforcement Admin.,* 51 F.3d 732, 735 (7th Cir.1995) (describing government's conduct as "egregious" where government sent notice to claimant's home address although government knew claimant had been reincarcerated in county jail, and the federal agent who initiated the forfeiture had several contacts with the claimant at the county jail, but finding court could grant no relief where claimant waited over two years before seeking return of the property although he had actual notice of the forfeiture proceedings

from another source); *United States v. Giraldo*, 45 F.3d 509, 511 (1st Cir.1995) (where claimant is residing at place of government's choosing, such as in prison, government "must take steps to locate the claimant in order to satisfy due process"); *Torres v. $36,256.80 United States Currency*, 25 F.3d 1154, 1161 (2d Cir.1994) (a "simple call" to the Bureau of Prisons often suffices to determine claimant's whereabouts if claimant is serving his or her sentence); *Aero–Medical, Inc. v. United States*, 23 F.3d 328, 330 (10th Cir.1994) (where DEA agent knew address was no longer current, and new address was readily ascertainable, sending forfeiture notice to last known address was not adequate). Madewell argues that precisely the circumstances described in *Woodall* obtained in his case.[20] We disagree.

■ In this case, the DEA sent the notice of forfeiture to Madewell at the address he had given after his arrest and seizure of the property in question. Madewell was not in federal custody, was not being prosecuted for federal offenses, and no federal court had ordered Madewell's release to an address different from the one Madewell had given after his arrest. *Compare Woodall*, 12 F.3d at 794. Nor would any of the contact DEA agents had with Madewell, such as testifying in state criminal proceedings, have given the DEA notice of Madewell's other "home" address. *Compare Williams*, 51 F.3d at 735 (DEA agent had contact with claimant in county jail, and therefore knew his location). Nor did the DEA have any notice that Madewell's address had changed requiring it to use readily ascertainable means to find him. *Compare Aero–Medical, Inc.*, 23 F.3d at 330. Madewell has failed to generate a genuine issue of material fact as to his allegations that federal agents still had him under surveillance and therefore knew his Pierce City address, because he has provided no evidence of continued DEA surveillance. Any confusion about Madewell's actual residence was the result of Madewell's own conduct, not the

result of a willful failure to send notice to an address the DEA knew or should have known. Thus, the DEA's endeavors to provide Madewell with written notice by sending such notice to his last known address was "reasonably calculated, under all the circumstances," to achieve the result required by due process. *Woodall*, 12 F.3d at 794–95.

■ When the DEA received the returned notice, they properly pursued notice by publication as authorized by 19 U.S.C. § 1607(a). *Woodall*, 12 F.3d at 792. Madewell's objection to the notice in *U.S.A. Today* seems to be to its "boilerplate" nature. Madewell cites *Glasgow*, 12 F.3d at 798, as holding that notice in *U.S.A. Today* is constitutionally inadequate. However, what this court held in *Glasgow* was that written notice sent to a claimant that merely refers to more detailed notice to be given in some, unspecified future edition of *U.S.A. Today* is insufficient. *Glasgow*, 12 F.3d at 798. The published notice here was adequate. Madewell's due process rights were not violated by the administrative forfeiture owing to lack of adequate notice. We therefore affirm the district court on Madewell's second allegation of error.

**V.**

Finally, we turn to Madewell's assertion that the district court improperly entered summary judgment in favor of all defendants, when the MSHP defendants had not moved for summary judgment, and Madewell asserts that he had no notice that Prine's assertion of an affirmative defense of failure to state a claim in Prine's answer would be treated as a motion for summary judgment, or that the court would *sua sponte* grant summary judgment in favor of the MSHP defendants. We find no error.

■ We consider first whether the court improperly converted Prine's request for dismissal in his answer into a motion for summary judgment. Madewell assumes that

---

20. Although Madewell admits living at the Springfield address in January of 1989, Madewell states that his "address" since 1982 has been in Pierce City, Missouri, and that he gave the Pierce City address in the Lawrence County proceedings. Madewell asserts that he was living at the Pierce City address at the time the seizure notice was sent, and that this address was known to his attorney in the Lawrence County case, and also known to state officials involved in that case.

the court treated the affirmative defense as a motion pursuant to *Fed.R.Civ.P.* 12(b)(6).[21] Federal Rule of Civil Procedure 12(b) states that

> If, on a motion ... to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

*Fed.R.Civ.P.* 12(b). In *Angel v. Williams*, 12 F.3d 786 (8th Cir.1993), this court held that the district court is not required by Rule 12(b) to give affirmative notice to the parties of its intent to consider matters outside the complaint. *Angel*, 12 F.3d at 788 (citing *Hubbard v. Parker*, 994 F.2d 529, 531 (8th Cir.1993). Constructive notice that the court will consider matters outside of the complaint is sufficient. *Id.* A district court's failure to give formal notice that it will treat a motion to dismiss for failure to state a claim as a motion for summary judgment is harmless where the nonmoving party has submitted materials outside of the pleadings in support of its resistance to a motion to dismiss, *Davis v. Johnson Controls, Inc.*, 21 F.3d 866, 867 (8th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 426, 130 L.Ed.2d 340 (1994), or where the nonmoving party has an adequate opportunity to respond to the summary judgment motion and there is a lack of any showing that any material facts were disputed or missing from the record. *Davis*, 21 F.3d at 867; *Angel*, 12 F.3d at 788–89; *Gibb v. Scott*, 958 F.2d 814, 816 (8th Cir.1992).

▮ In the present case, the lack of any affirmative notice by the court that it was considering Prine's assertion that Madewell had failed to state a claim upon which relief

can be granted as a motion for summary judgment is not fatal. *Angel*, 12 F.3d at 788. Rather, Madewell had constructive notice that the right of all defendants to judgment as a matter of law was at issue. *Id.* That constructive notice came from the DEA defendants' alternative designation of their motion as a motion for summary judgment, and Madewell's own submission of materials outside of the pleadings for consideration by the court, including a response to Prine's separate answer attacking Prine's assertion that no claim had been stated on both factual and legal grounds. *Davis*, 21 F.3d at 867. Furthermore, there is a lack of any showing that any material facts were in dispute or missing from the record with regard to the conduct of any of the defendants, because the district court granted summary judgment in the case on the basis of a stipulated record. *Davis*, 21 F.3d at 867; *Angel*, 12 F.3d at 788–89; *Gibb*, 958 F.2d at 816. The district court properly determined, as a matter of law, that none of the defendants in this action had violated Madewell's constitutional right to due process, and Madewell had the opportunity fully to litigate that issue.

▮ Apparently arguing in the alternative that there was no motion by Prine that could be converted into a motion for summary judgment, Madewell asserts that the court was without power to grant summary judgment in favor of Prine *sua sponte*. This court has often held that such a grant of summary judgment is proper only where the "'party against whom judgment will be entered was given sufficient advance notice and an adequate opportunity to demonstrate why summary judgment should not be granted.'" *Shur–Value Stamps, Inc. v. Phillips Petroleum Co.*, 50 F.3d 592, 594 (8th Cir.1995) (quoting *Interco Inc. v. National Sur. Corp.*, 900 F.2d 1264, 1269 (8th Cir.1990)).[22] This court

---

21. Pursuant to *Fed.R.Civ.P.* 12(b), the defense of failure to state a claim upon which relief can be granted may be asserted, at the option of the pleader, either in the pleader's answer or in a pre-answer motion. We will assume for purposes of this appeal, as has Madewell, that the effect of Prine's assertion of the affirmative defense was the same as filing a motion pursuant to *Fed.R.Civ.P.* 12(b)(6), and that such motion could be converted, in proper circumstances, into a

motion for summary judgment pursuant to *Fed. R.Civ.P.* 56.

22. In *Shur–Value Stamps, Inc.*, this court found that it could not reach the issue of whether the district court had improperly granted summary judgment *sua sponte*, because the complaining party had not challenged the adequacy of notice of the district court's intention to grant summary judgment *sua sponte* before the district court.

has applied these standards in a number of decisions. *See, e.g., Demerath Land Co. v. Sparr*, 48 F.3d 353, 355 (8th Cir.1995) (court did not raise issue on which summary judgment was granted *sua sponte*, because one of the parties did, and the nonmoving party had an opportunity to respond, but offered no evidence); *Hobbs v. Lockhart*, 46 F.3d 864, 867 (8th Cir.1995) (and holding notice of a hearing was insufficient notice that issue would be *sua sponte* grant of summary judgment); *Kaufman v. St. Louis S.I. Ltd.*, 18 F.3d 610, 612 (8th Cir.1994) (summary judgment *sua sponte* requires notice and chance to respond, and, where none was given, it was improper to grant summary judgment in favor of defendants against whom no evidence was presented showing liability, when no defect appeared on the face of the complaint); *Hubbard v. Parker*, 994 F.2d 529, 530 (8th Cir.1993) (citing *Interco Inc.*, 900 F.2d at 1269, for this standard, and finding sufficient notice in judge's statement that he had "serious doubts that this case should go forward on any ground" and offering the parties the chance to argue the issue). Thus, as with conversion of a motion to dismiss into a motion for summary judgment, the propriety of granting summary judgment *sua sponte* turns on proper notice to the nonmoving party and an opportunity to respond.

MSHP defendant Prine directs us to two decisions in which this court determined that the district court had properly granted summary judgment *sua sponte* in favor of nonmoving parties based on the motions for summary judgment filed by other parties. *See McNees v. Mountain Home, Ark.*, 993 F.2d 1359 (8th Cir.1993); *Chrysler Credit Corp. v. Cathey*, 977 F.2d 447 (8th Cir.1992). In *McNees*, the court held that the liability of the nonmoving party was "derivative" so that when summary judgment in favor of a moving party leaves no genuine issue of material fact as to the nonmoving party's right to summary judgment as well, *sua sponte* grant of summary judgment is permissible. *McNees*, 993 F.2d at 1361. In that case, defendant Scott, a city police officer, moved for summary judgment in his individual capacity in the plaintiff's 42 U.S.C. § 1983 action alleging conspiracy and Scott's conflict of interest in an investigation. *Id.* at 1360. However, the court granted summary judgment in favor of all defendants, including the city and officer Scott in his official capacity. *Id.* The court found after full litigation of the motion for summary judgment, that there was no genuine issue of material fact and that all defendants were entitled to judgment as a matter of law. *Id.* at 1361–62.

In *Cathey*, the district court properly granted summary judgment *sua sponte* in favor of non-moving cross-claimant defendants where the losing party had sufficient notice in the form of the summary judgment motion by the plaintiff, and both cross-claimant defendants' and plaintiff's right to summary judgment turned on the same issue. *Cathey*, 977 F.2d at 449. That issue was the defendants' personal liability on a note held by the plaintiff credit company. *Id.* Once the court concluded that the defendants were personally liable, both the plaintiff and the cross-claimant defendants, who had also asserted that the defendants were personally liable as their defense to the plaintiff's claims, were entitled to summary judgment, and "the district court had no reason to delay the entry of judgment for the" cross-claimant defendants. *Id.* at 449.

In the present case, Madewell was certainly on notice that summary disposition was sought on the asserted inadequacy of the factual and legal bases for his claims. All defendants had asserted, either in answer to

Shur–Value Stamps, Inc., 50 F.3d at 595. In the present case, Madewell moved to reconsider the court's June 3, 1994, order granting summary judgment on June 22, 1994, asserting that his motion was pursuant to *Fed.R.Civ.P.* 60(b), and requesting that the court reinstate some or all of the defendants, arguing that he had received no notice of the court's intent to grant summary judgment *sua sponte* in favor of the MSHP defendants. However, the court construed the motion to be one to alter or amend judgment pursuant to

*Fed.R.Civ.P.* 59(e), and therefore found Madewell's motion untimely. We need not consider whether Madewell's only objection to the grant of summary judgment in favor of the MSHP defendants was too untimely to preserve the error for appeal, nor need we consider whether the district court's construction of the motion as one pursuant to *Fed.R.Civ.P.* 59(e) was proper, as we find that the district court properly entered summary judgment in favor of the MSHP defendants.

Madewell's complaint, or by motion for summary judgment, that they were entitled to judgment as a matter of law. It was not necessary that the court identify the issues upon which summary disposition was asserted, because the parties had. *Demerath Land Co.,* 48 F.3d at 355. Madewell had availed himself of opportunities to address the legal and factual arguments of the defendants in his response to Prine's answer and his resistance to the DEA defendants' motion. *See, e.g., Shur–Value Stamps, Inc.,* 50 F.3d at 594 (losing party must have been given opportunity to respond to possibility of summary disposition).

 Although Prine's liability was not "derivative" of any liability of the DEA defendants, *compare McNees* at 1361–62, it was founded on the same body of undisputed facts, and the facts and law related to claims against all defendants were fully argued by the parties. *Id.* Although this court has distinguished between the questions of whether the adoption, on the one hand, and the transfer, on the other, were proper, the liability of all of the defendants depended on the issue of whether Madewell's due process rights had been violated in the circumstances leading to federal administrative forfeiture of property seized by state officials. *Compare Cathey,* 977 F.2d at 449. Once the court concluded, on the undisputed facts, that defendant Prine had properly handed over the seized property to his superiors, and that he had no further responsibility for the property, and that the DEA defendants had properly adopted the seizure, there was no legal impediment to summary judgment for all defendants, and the district court had no reason to delay the entry of judgment for defendant Prine as well as entering summary judgment for the DEA defendants. *Id.*

### CONCLUSION

We hold that there was no due process violation in either the DEA's adoption of the seized property at issue here or in the MSHP's transfer of the seized property to the DEA without a turnover order. We hold further that the DEA provided adequate notice of the administrative forfeiture of the seized property by sending notice to the last address known to them and that there was no basis for them to know of or discover Madewell's residence at a different address. Finally, we hold that the district court properly entered summary judgment in favor of all defendants although only the DEA defendants had specifically moved for summary judgment. The district court's grant of summary judgment was therefore proper on all grounds Madewell has claimed as error here. Finding no error, the judgment of the district court is affirmed.